UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL LEE WEIBLE,<br>　　　　Petitioner,<br>　　v.<br>DAVID LONG, Warden,<br>　　　　Respondent. | Case No. 14-03619 BLF (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS; DENYING CERTIFICATE OF APPEALABILITY** |

Petitioner has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging his state conviction. The Court denied Respondent's motion to dismiss the first amended petition, (Docket No. 33), as untimely and ordered the action to proceed on the merits of the sole claim presented – the failure to recuse by Judge Benson. (Docket No. 52.) Respondent filed an answer on the merits along with exhibits in support thereof. (Docket No. 55.) Petitioner filed a traverse. (Docket No. 73.) For the reasons set forth below, the Petition for a Writ of Habeas Corpus is **DENIED**.

### I. STATEMENT OF FACTS

In September 2003, Petitioner was convicted in the San Francisco County Superior Court of one count of first degree burglary and one count of receiving stolen property (S.F.

Superior Ct. case no. 186560). (Am. Pet. at 4-13, Docket No. 33; Ans. Ex. 1.[1]) The convictions were based on Petitioner's 2002 burglary of the residence of San Francisco Superior Court Judge Robert Dondero. (*Id.*) In a separate court trial, Petitioner admitted that he had suffered a prior serious felony conviction, i.e., a "strike" for purposes of California's "Three Strikes" law. (Ans. Ex. 1 at 2.)

On July 29, 2005, the California Court of Appeal reversed Petitioner's conviction on the grounds he had been denied his *Faretta*[2] right to represent himself at trial. (*Id.*) After the matter was remanded to the trial court, Petitioner pleaded guilty to the charges of burglary and receiving stolen property, and he again admitted that he had suffered a prior serious felony conviction. (Ans. Ex. 2.[3]) On May 12, 2006, the trial court sentenced Petitioner to state prison for eight years. (Ans. Ex. 3.[4]) On June 30, 2006, Petitioner filed a notice of appeal, but abandoned the appeal on March 8, 2007. (Ans. Exs. 4, 5.[5])

In January 2010, Petitioner burglarized the San Francisco residence of Esther and Robert Menache. (Ans. Ex. 12 at 2.[6]) Petitioner was charged with that burglary in July 2010, and the information also alleged that he had been convicted of three prior burglaries. (*Id.* at 1; *see also* Ex. 21, Clerk's Transcript ("CT") at 22-24.[7]) The information did not provide any details of the prior burglaries other than their dates of commission, but one of

---

[1] Opn. in Cal. Court of Appeal case no. A104991.

[2] *Faretta v. California*, 422 U.S. 806 (1975).

[3] Reporter's Transcript of plea hearing held on April 24, 2006, at pages 16-21, Cal. Court of Appeal case no. A114448.

[4] Reporter's Transcript of sentencing hearing held on May 12, 2006, Cal. Court of Appeal case no. A114448.

[5] Cal. Court of Appeal case no. A11444.

[6] Opn. in Cal. Court of Appeal case no. A131510; S.F. Superior Court case no. 212692.

[7] All subsequent citations to the Reporter's Transcript ("RT") and Clerk's Transcripts ("CT") relate to Petitioner's trial in San Francisco Superior Court case no. 212692 (Court of Appeal case no. A131510). The Clerk's Transcript is lodged as Exhibit 21, (Docket Nos. 53-23 and 53-24), and the Reporter's Transcript is lodged as Exhibit 22, (Docket Nos. 53-25 thru 53-31), to Respondent's Answer.

the convictions was for the 2002 burglary of Judge Dondero's residence. (*Id.*) The judge who presided over Petitioner's 2010 trial for the Menache burglary was San Francisco Superior Court Judge Jerome Benson. (RT 1 to RT 1130.) After a jury found Petitioner guilty of the Menache burglary, Petitioner waived a jury trial on his prior convictions. (CT 222; RT 1029-1035.)

The trial on the prior convictions was originally set for October 19, 2010. (CT 373-382; RT 1042-1060.) At the beginning of the court session, Petitioner's counsel advised Judge Benson that Petitioner had a *Marsden* motion he wanted to make. (RT 1042.) Then in a separate in-camera hearing outside the presence of the prosecutor, Petitioner clarified that he really wanted to make a *Faretta* motion to discharge his appointed trial attorney, Brendan Conroy, and represent himself for the remainder of the trial. (CT 373-376; RT 1042, 1052.) Petitioner said that attorney Conroy had "intimidated" him into acquiescing in a defense that was factually inaccurate, (CT 374-375). Petitioner also requested a continuance so he could prepare post-trial motions of his own. (CT 375.) Petitioner stated that he was not basing his *Faretta* motion on any error committed by Judge Benson: "There are other issues at this time that I plan on raising… and other errors that have happened to me while this case has proceeded through the court system. Of course, not to any fault of yours at all, your honor. [¶] I don't think you were ever made aware of this situation, which I am well aware to make the court aware of once I represent myself." (CT 375-376).

Judge Benson commented that he recalled hearing at some point during trial that one of Petitioner's prior convictions had been reversed on appeal because Petitioner had been denied his *Faretta* right to represent himself. (CT 377.) Petitioner said that was correct, and he explained that the reversal had arisen in the case involving the 2002 burglary of Judge Dondero's residence. (*Id.*) Petitioner further explained that when he was tried for the Dondero burglary, all judges of the San Francisco Superior Court had been recused because of the potential conflict of interest inherent in a case in which the victim had been a fellow judge. (*Id.* at 377-378.) Petitioner also stated that he believed he

3

could never receive a fair trial – in any case – from any San Francisco Superior Court judge. (*Id.* at 378-379.) Petitioner further stated that defense attorney Conroy (and the predecessor attorney, George Borges, who had initially been assigned to Petitioner's 2010 burglary trial) had ignored Petitioner's requests to file a recusal motion against Judge Benson. (*Id.* at 377-379.)

Judge Benson invited a response from defense attorney Conroy. (CT 379.) Conroy said, inter alia, that he had spoken with Petitioner before trial about filing a recusal motion, but that Petitioner had specifically rejected that suggestion:

> I also discussed with [Petitioner] the issue of the recusal of the San Francisco bench as it related to Judge Dondero. I didn't think it would have any effect any more, but I did tell [Petitioner] I would bring it up and bring any motion he thought appropriate. He declined to do that.
>
> I advised him that his declination to bring up the issue at the earliest possible time could potentially be determined to be a waiver of the issue. He specifically told me he did not want the issue brought up.
>
> I had some question in my mind whether, since Judge Dondero was no longer on the bench, the case wasn't being litigated in that manner that it was any import to this case. I would have brought the motion, but [Petitioner] did not want the motion brought prior to trial.

(*Id.* at 380.[8])

Judge Benson said he had no prior knowledge of Petitioner's 2002 burglary of Judge Dondero's residence: "I personally don't have any knowledge of that"; "[a]ll I know is what has happened personally in front of me in this case." (CT 381.) Judge Benson also noted that the issue of Petitioner's prior 2010 burglary involving Judge Dondero was not "brought to [his] attention during these proceedings before [him]." (*Id.*) Judge Benson concluded that Petitioner had "waited to see what the result of his trial was before raising the issue" in a post-trial motion. (*Id.*) Judge Benson ultimately denied Petitioner's *Faretta*

---

[8] In the trial for the Menache burglary, neither the charging documents nor the trial evidence supporting the prior convictions made any reference to Judge Dondero as the victim of one of Petitioner's prior crimes. (CT 1-5, 22-24.)

4

motion on the grounds it was untimely, and there was no reason given for the lateness of the request or justification for the delay. (RT 1052-1056.)

The proceedings were adjourned and the trial on Petitioner's prior convictions was continued to October 21, 2010. (RT 1060-1098.) At the trial, the prosecutor presented certified court records of Petitioner's prior convictions, and Judge Benson found the convictions true. (RT 1061-1098.)

On December 27, 2010, in a written motion to set aside his 2010 burglary conviction, Petitioner argued that Judge Benson should not have been allowed to preside over the trial. (CT 264-274.) The motion was argued at the sentencing hearing held on January 11, 2011. (RT 1104-1124.) Petitioner again argued that neither Judge Benson nor any other San Francisco Superior Court judge should have been allowed to preside over the matter. (CT 1104-1124.) Petitioner also reasserted that he had asked defense attorney Conroy to move to recuse Judge Benson before trial, but that Conroy had refused. (RT 1114-1116.)

In response to Petitioner's question, Judge Benson confirmed that he and Judge Dondero had worked at the same time in the San Francisco County District Attorney's office. (RT 1116.) Judge Benson added that he and then-Assistant District Attorney Dondero had had little direct contact in that office: they had never worked on the same case, they had never reviewed each other's work, and they had never shared an office. (*Id.*) Judge Benson also said that he and ADA Dondero had probably attended some office-wide meetings at the same time but did not recall any specific meetings. (*Id.* at 1117.)

Judge Benson ruled that there was no reason for him to recuse himself in the 2010 trial for the Menache residence burglary. (RT 1122-1124.) Judge Benson based his ruling on several grounds. First, he believed the assertion of defense attorney Conroy that he had talked with Petitioner about a recusal motion at the outset of the trial, and that Petitioner had affirmatively waived his right to make such a motion. (RT 1122.) Second, Judge Benson noted that Petitioner had failed to file a written recusal motion during trial, as

5

required by California law (Code Civ. Proc. § 170.3(c)(1)). (*Id.*) Third, even if Petitioner's post-trial motion for a new trial could have been considered a written recusal motion, that motion would have been untimely because it was made long after Petitioner had become aware of the grounds for such a motion. (*Id.*) Fourth, Judge Benson saw no factual basis for a recusal motion because he had had no knowledge of Petitioner's prior burglary of Judge Dondero's residence. (RT 1118, 1122-1123.) Judge Benson also said he felt no bias against Petitioner, and he did not think any reasonable third party would believe he could not give Petitioner a fair trial. (RT 1122.) Judge Benson later sentenced Petitioner to state prison for 18 years for the Menache burglary and prior convictions. (Ex. 12 at 1-2.)

On January 7, 2011, Petitioner again challenged his 2010 burglary conviction in a petition for writ of mandate filed in the California Court of Appeal (case no. A130831). (Ans. Ex. 6.) In that petition, Petitioner reasserted his claim that Judge Benson had erred in declining to recuse himself from Petitioner's trial. (*Id.*) On January 27, 2011, the Court of Appeal summarily denied the petition for writ of mandate. (Ans. Ex. 7.) On February 7, 2011, Petitioner presented his recusal claim to the California Supreme Court in a petition for review (case no. S190452). (Ans. Ex. 8.) On March 16, 2011, the California Supreme Court summarily denied review. (Ans. Ex. 9.)

On November 2, 2011, Petitioner filed (through counsel) a direct appeal of his 2010 burglary conviction in the California Court of Appeal (case no. A131510). (Ans. Ex. 10.) That appeal raised one issue – that Judge Benson had erred in denying Petitioner's motion for a mistrial based on an alleged violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (Ans. Ex, 10 at 23-29.) On August 20, 2012, the Court of Appeal affirmed the conviction. (Ans. Ex. 12.)

On October 9, 2012, Petitioner presented his *Brady* claim to the California Supreme Court in a petition for review. (Ans. Ex. 13.) On November 14, 2012, the state high court summarily denied review (case no. S205856). (Ans. Ex. 14.)

On November 5, 2013, Petitioner challenged his 2010 burglary conviction yet again

by filing a petition for writ of habeas corpus in the San Francisco Superior Court (writ no. 6784). (Ans. Ex. 15.[9]) That petition presented five claims, including the failure of Judge Benson to recuse himself. (*Id.*) The superior court – Judge Bruce Chan – denied the habeas corpus petition on January 28, 2014. (Ans. Ex. 16.) Judge Chan rejected Petitioner's recusal claim for three reasons: (1) Petitioner had affirmatively waived his right to seek Judge Benson's recusal; (2) Petitioner had never filed a written request for recusal, as required by California statute; and (3) Petitioner's first request for recusal was untimely, in that he did not even mention his recusal right until after he had been convicted on the underlying burglary charge. (*Id.* at 6-7.)

On March 5, 2014, Petitioner presented the same five habeas claims to the California Court of Appeal (case no. A141189.) (Ans. Ex. 17.) On March 6, 2014, the Court of Appeal denied relief in the following opinion quoted in its entirety:

> The petition for a writ of habeas corpus is denied.
> Claims raised in the petition have been considered and rejected by this court in connection with a prior appeal (A131510, filed 8/20/12) and a prior writ petition (A130831, denied 1/27/11). (*In re Waltreus* (1965) 62 Cal.2d 218, 225; *In re Clark* (1993) 5 Cal.4th 750, 767.) To the extent the current petition seeks to raise additional claims, those claims are barred as successive. (See *In re Robbins* (1998) 19 Cal.4th 770, 788, fn. 9; *In re Clark*, *supra* at 774-775.) Furthermore, the petition fails to state a prima facie case for relief.

(Ans. Ex. 18.)

On April 24, 2014, Petitioner challenged the Court of Appeal's ruling in a habeas corpus petition to the California Supreme Court (case no. S218025). (Ans. Ex. 19.) The California Supreme Court summarily denied the petition on July 9, 2014. (Ans. Ex. 20.)

On August 11, 2014, Petitioner submitted to this Court a federal habeas petition containing six claims. The Court dismissed five of the claims and ordered Respondent to answer the recusal claim. (Docket No. 53.)

---

[9] As Respondent points out, the caption of the petition shows that it was initially addressed to the Santa Clara County Superior Court, but the petition was later transferred to the San Francisco Superior Court. (Ans. at 6, fn. 3, Ex. 15 at 1.)

7

## II. DISCUSSION

### A. <u>Standard of Review</u>

This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The writ may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

"[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly"; rather, that application must also be unreasonable. *Id*. at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision. *Id*. at 412; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

8

While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. *Id.*

The California Court of Appeal, in its opinion on habeas corpus, addressed the claim raised in the instant petition. (*See* Ex. 18.) The Court of Appeal thus was the highest court to have reviewed that claims in a reasoned decision, and it is the Court of Appeal's decision that this Court reviews herein. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Barker v. Fleming*, 423 F.3d 1085, 1091-92 (9th Cir. 2005).

**B.** **Claims and Analysis**

Respondent asserts that the recusal claim fails for both procedural and substantive reasons. (Ans. at 8.) First, the claim is procedurally defaulted because Petitioner did not properly present it to the California courts and Petitioner cannot show cause and prejudice. (*Id.* at 10-11.) Second, the state appellate court's rejection of this claim on the merits was reasonable. (*Id.* at 12.)

    **1.** **Procedural Default**

A federal court will not review questions of federal law decided by a state court if the decision also rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). In the context of direct review by the United States Supreme Court, the "adequate and independent state ground" doctrine goes to jurisdiction; in federal habeas cases, in whatever court, it is a matter of comity and federalism. *Id.* The procedural default rule is a specific instance of the more general "adequate and independent state grounds" doctrine. *Wells v. Maass*, 28 F.3d 1005, 1008 (9th Cir. 1994).

In cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law or demonstrate that failure to

9

consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

The Ninth Circuit has recognized and applied the California contemporaneous objection rule in affirming denial of a federal petition on grounds of procedural default where there was a complete failure to object at trial. *See Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir. 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092-93 (9th Cir. 2004); *Vansickel v. White*, 166 F.3d 953, 957-58 (9th Cir. 1999). On the other hand, where an objection has been made but the trial court in its discretion declines to consider it on the merits, the contemporaneous objection rule is not a clear, consistently applied and well-established rule of state law that precludes federal review of the claim. *See Melendez v. Pliler*, 288 F.3d 1120, 1126 (9th Cir. 2002).

Respondent argues that Petitioner's recusal claim may not be considered by this Court because it was not properly presented to the California courts. Respondent asserts that the 2010 burglary trial contains no evidence of any recusal request – oral or written – made by Petitioner or defense attorney Conroy (or the predecessor attorney Borges) before the posttrial hearing on Petitioner's prior convictions held on October 19, 2011. (Ans. At 10.[10])

The record shows that Petitioner remained silent on the issue of recusal throughout the Menache burglary trial, and then mentioned Judge Dondero's name for the first time during the posttrial October 19, 2011 in-camera hearing. *See supra* at 3. Although Mr. Conroy advised the court that Petitioner wished to present a *Marsden* motion, it quickly became apparent that Petitioner was really making a *Faretta* motion to represent himself, (RT 1052).[11] There was no indication that Petitioner intended to raise the issue of recusal

---

[10] Respondent's argument indicates that Judge Benson explicitly ruled on a recusal motion and denied it, (Ans. at 11), but the record does not support this conclusion as Judge Benson only ruled on Petitioner's *Faretta* motion and made no reference to any recusal motion by Petitioner. (RT 1052-1056.)

[11] After the matter was submitted, Judge Benson determined that, to the extent Petitioner had made a *Marsden* motion, there was no basis for granting it because the record did not show that counsel was providing inadequate representation, or that there was any

10

United States District Court
Northern District of California

or sought a ruling on such a motion. *Id.* Nevertheless, Petitioner used this opportunity to argue that all San Francisco superior court judges had been recused for the Dondero burglary, and that he had been assured that he "would never be brought in front of another San Francisco superior court judge again." (CT 377-378.) Petitioner asserted that he had raised the recusal issue to his previous attorney, George Borges, whom he fired "because he wouldn't bring the issue to the court," and that it "just so happens that Brendan Conroy shares the same office with [Mr. Borges]." (*Id.* at 378.) Petitioner then attempted to assert that there was a conflict of interest because these two attorneys were partners, and it violated his constitutional rights to have Mr. Conroy appointed as his counsel. (*Id.* at 379-380.) When invited to respond by Judge Benson, Mr. Conroy stated that Mr. Borges was not fired but had asked to be relieved "because of [Petitioner]'s insistence on a no time waiver." (*Id.* at 379.) Mr. Conroy then stated that he had disclosed the fact that he shared offices with Mr. Borges and had also discussed the issue of recusal with Petitioner. (*Id.*) Mr. Conroy stated that when he offered to step aside if Petitioner had "any problem with the fact that Mr. Borges and [he] shared a space," Petitioner indicated that he understood what the arrangement was and that "it was fine with him." (*Id.*) Furthermore, Mr. Conroy stated that Petitioner specifically told him that he did not want the issue of recusal brought up, even after being advised that his failure to do so at the earliest possible time could be determined to be a waiver of the issue. (*Id.*) Accordingly, the record clearly shows that Petitioner completely failed to object to Judge Benson presiding over his trial by submitting a motion for recusal at anytime during the proceedings and that he specifically told his attorney not to raise it.

In regard to the failure to submit a recusal motion, Petitioner now claims that defense counsel "refused to bring a motion to the court before trial" when he brought the issue up to him. (Am. Pet. at 4.) During the hearing on Petitioner's motion to set aside the 2010 burglary conviction on December 27, 2010, Petitioner argued that Mr. Conroy's

---

irreconcilable conflict or any conflict at all. (RT 1052.) In regard to the *Faretta* motion, Judge Benson found that the motion was untimely. (*Id.* at 1055-1056.)

11

statement on the record that he "didn't think it would have any effect any more [*sic*]," indicated that counsel had "no inclination of bringing anything to the court about this because he don't think it has anything to do with [*sic*]." (RT 1114.) However, Petitioner offers no explanation as to why he did not make a *Marsden* or *Faretta* motion earlier in the trial on that basis, *i.e.*, for Mr. Conroy's alleged refusal to raise a recusal motion. Rather, Petitioner waited until after he was found guilty of the 2010 Menache burglary to raise the *Marsden/Faretta* motion. Accordingly, the record clearly shows that Petitioner completely failed to object at trial, and perhaps even strategically so, and move for Judge Benson's recusal during the trial. Therefore, this appears to be a case where California's contemporaneous objection rule applies to bar this claim from federal habeas review. *See Inthavong*, 420 F.3d at 1058.

Unless a habeas petitioner shows cause and prejudice, a court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims. *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992) (citations omitted); *Farmer v. McDaniel*, 98 F.3d 1548, 1560 (9th Cir. 1996). If a state prisoner cannot meet the cause and prejudice standard, however, a federal court may hear the merits of successive, abusive or procedurally defaulted claims if the failure to hear the claims would constitute a "miscarriage of justice." *See Sawyer*, 505 U.S. at 339-40 (citing *Kuhlmann v. Wilson*, 477 U.S. 436, 454-55 (1986).

Petitioner again argues in traverse that he discussed the issue of recusal of "all judges of the Superior Court of San Francisco" with his attorney on the eve of trial, but that his attorney advised him that the court would not even entertain such a motion. (Trav. at 4.) A petitioner may show cause by establishing constitutionally ineffective assistance of counsel, but attorney error short of constitutionally ineffective assistance of counsel does not constitute cause and will not excuse a procedural default. *See McCleskey v. Zant*, 499 U.S. 467, 494 (1991); *Murray v. Carrier*, 477 U.S. 478, 486-88 (1986). However, even if the Court liberally construes Petitioner's assertion as a claim that counsel rendered ineffective assistance as grounds for cause, it cannot excuse the default of the recusal claim

12

because such an ineffective assistance of counsel claim must have been presented as an independent claim to the state courts. *See Carrier*, 477 U.S. at 489. The Court dismissed all claims, including ineffective assistance of counsel claims, except for the recusal claim when it granted Respondent's motion to dismiss for failure to exhaust state judicial remedies. (Docket No. 22.) A procedurally defaulted ineffective assistance of counsel claim, as Petitioner's claim likely would be, is not cause to excuse the default of another habeas claim unless the petitioner can satisfy the cause and prejudice standard with respect to the ineffective assistance of counsel claim itself. *See Edwards v. Carpenter*, 529 U.S. 446, 451-51(2000); Cockett v. Ray, 333 F.3d 938, 943 (9th Cir. 2003). He cannot.

Even if Petitioner were permitted to assert an ineffective assistance of counsel claim as grounds for cause, or if the Court decided to apply the "miscarriage of justice" exception, the recusal claim fails on the merits as discussed below.

### 2. **Failure to Recuse**

A federal habeas court reviews a state trial court judge's refusal to recuse himself under the abuse of discretion standard used by federal appellate courts to review a district judge's refusal to recuse himself. *See Poland v. Stewart*, 117 F.3d 1094, 1103 (9th Cir. 1997). This is an appropriate starting place, since if the state court's decision would survive review for abuse of discretion, it would pass the more rigorous analysis under *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993), that a habeas petitioner is not entitled to relief unless the record demonstrates that the trial error had a substantial and injurious effect or influence in determining the jury's verdict. *See id.* "An abuse of discretion is a plain error, discretion exercised to an end not justified by the evidence, a judgment that is clearly against the logic and effect of the facts as are found." *Id.* (where federal habeas petitioner challenged trial court judge's failure to recuse himself from presiding at second trial, no abuse of discretion where (1) nothing in transcript showed bias or prejudice toward defendants, (2) fact that trial judge in original trial was also trial judge in second trial was insufficient to establish bias and prejudice, and (3) Arizona courts correctly decided that trial judge properly presided over trial after denying prosecutor's motion to

13

dismiss).

"Supreme Court precedent reveals only three circumstances in which an appearance of bias—as opposed to evidence of actual bias—necessitates recusal." *Crater v. Galaza*, 491 F.3d 1119, 1131-32 (9th Cir. 2007) (judge's remarks at in-camera pretrial conference which sought to persuade petitioner to accept plea bargain, founded upon his legitimate knowledge of the proceedings and outcome in co-defendant's case, offered no evidence to overcome the "presumption of honesty and integrity" accorded to the determinations of a judge) (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). These are: (1) when the judge has a direct, substantial pecuniary interest in reaching a conclusion against one of the litigants; (2) when the judge becomes embroiled in a running, bitter controversy with one of the litigants; and (3) when the judge acts as part of the accusatory process. *Crater*, 491 F.3d at 1131. Respondent asserts that none of the criteria for Judge Benson's recusal was fulfilled. (Ans. at 13.)

Recusal is required where "the probability of actual bias on the part of the judge or decision maker is too high to be constitutionally tolerable." *Hurles v. Ryan*, 752 F.3d 768, 788 (9th Cir. 2014) (citing *Withrow*, 421 U.S. at 47). The inquiry is objective and asks "whether the average judge in that particular judge's position was likely to be neutral or whether there existed an unconstitutional potential for bias." *Id.* at 789. Therefore, to establish a due process violation, actual bias does not have to be proved, just an intolerable risk of bias. *Id.*

The state courts' rejection of this claim – first in denying Petitioner's petition for writ of mandate (case no. A130831) and again in denying his state habeas petition (case no. S218025) – was not unreasonable. Under the federal appellate court's abuse of discretion standard, the Court finds that Judge Benson did not exercise discretion to an end not justified by the evidence or a judgment "that is clearly against the logic and effect of the facts as are found." *Poland*, 117 F.3d at 1103. First of all, other than Petitioner's general assertions that Judge Benson was biased, there is no evidence in the record to show bias or prejudice. Petitioner claims that Judge Benson knew before the trial began that

14

Judge Dondero was a prior victim. (Am. Pet. at 10.) However, Judge Benson stated on the record that he was not personally aware of that fact until it was first brought to his attention at the October 19, 2010 hearing, which was after the 2010 burglary trial had already concluded. *See supra* at 4. As Respondent points out, the charging documents and the trial evidence supporting the prior convictions made no reference to Judge Dondero as the victim in one of Petitioner's prior crimes. *Id.*, fn. 8. Petitioner asserts that Judge Benson stated during the *Faretta* motion hearing that "Attorney Conroy told him before trial that Judge Dondero was in fact Petitioner's prior victim 'before the trial started.'" (Am. Pet. at 11, citing to RT 1118.) However, this is not an accurate account of the record. Petitioner quotes Judge Benson from the *Faretta* hearing when he stated that "I recall something to the effect during these proceedings that after a prior conviction that you suffered in the past, there was an appeal, and I think there was a reversal on the grounds that you were denied self-representation." (CT 377.) Judge Benson clarified during the motion to set aside hearing that this recollection was of "something that I learned after this case was assigned [] to me for trial. It wasn't something that I independently knew before this case was assigned [] for trial. It was something that Mr. Conroy had said." (RT 1118.) Contrary to Petitioner's assertion, none of these comments by Judge Benson includes an admission that Mr. Conroy had specifically informed him "before the trial" that Judge Dondero was one of Petitioner's prior victims; rather, Judge Benson only knew that Petitioner had a previous conviction reversed based on the denial of self-representation without any indication that he knew specific facts regarding that prior conviction. Accordingly, Petitioner fails to provide any evidence showing Judge Benson had personal knowledge of this fact prior to trial and that it created an actual bias towards Petitioner.

Furthermore, as discussed above, Petitioner provides no explanation as to why he failed to bring the issue of recusal to Judge Benson's attention at any time during the trial or why he was prevented from doing so. *See supra* at 12. Certainly, his attorney's alleged refusal to raise a recusal motion on his behalf was grounds for a *Marsden* or *Faretta* motion, but Petitioner waited until after the trial to do so, which indicates a strategic

15

1 decision on his part rather than ineffective assistance of counsel. Petitioner asserts that he

2 did not do so because he did not know that Judge Benson had previously worked with

3 Judge Dondero. (Trav. at 7.) However, he had sufficient concern based on the fact that

4 Judge Benson and Judge Dondero were both judges in the San Francisco Superior Court

5 which he claims he expressed to counsel before trial commenced. (*Id*. at 4.) He expressed

6 his doubt to Judge Benson that he could ever receive a fair trial before any San Francisco

7 Superior Court judge at the *Faretta* hearing. *See supra* at 3-4. Furthermore, at the motion

8 to set aside hearing, Petitioner specifically asked whether Judge Benson had worked with

9 Judge Dondero in the district attorney's office "to go on the record with that," (RT 1116),

10 which indicates that Petitioner had knowledge of this fact prior to the hearing.

11 Accordingly, Petitioner's assertion that he had no reason to file such a motion earlier in the

12 proceedings is not persuasive.

13 Petitioner attempts to show implied bias by pointing to various statements and

14 actions during the proceedings before Judge Benson. He first asserts that Judge Benson

15 "shows bias" when he stated during the sentencing hearing, "You'll have to refresh my

16 recollection which of those two is the prior that involved Judge Dondero's residence."

17 (Am. Pet. at 11.) Petitioner seems to imply that this statement is evidence of Judge

18 Benson's special interest in the prior conviction involving Judge Dondero. However, a

19 review of the transcript shows that Judge Benson was asking in response to Petitioner's

20 request for clarification regarding which prior would be struck. (RT 1174-1175.)

21 Furthermore, the record shows that after listening to both parties' arguments, Judge

22 Benson decided the following: "Despite the fact that there are many circumstances in

23 aggravation that, under most circumstances might incline a judge to impose the upper

24 term, the Court exercises its discretion after evaluating all of the facts in this case, and I'll

25 impose the midterm." (RT 1181.) This exercise of discretion in choosing to impose the

26 lower term does not indicate bias by Judge Benson that resulted in an unfair result to

27 Petitioner. Petitioner also asserts that after he requested a hearing on the restitution

28 imposed, Judge Benson stated, "'Well, in all probability, you'll be in state prison but we'll

1 cross that bridge when it arises.'" (Am. Pet. at 12.) Petitioner asserts that when he
2 suggested the restitution hearing be scheduled in conjunction with another pending matter,
3 Judge Benson stated that "[i]t's up to the People to do that, If they don't set a hearing date,
4 then there is nothing before me." (*Id.*) Petitioner claims that "[t]his whole process is
5 unlawful." (*Id.*) However, Judge Benson's words and actions in this regard do not show
6 any bias on his part, and as Petitioner stated during the hearing, he was "just making a
7 suggestion to the Court to make it cheaper on the taxpayers," rather than asserting a
8 constitutional right. (RT 1184.) Petitioner also asserts that Judge Benson should not have
9 presided over his motion to set aside the 2010 burglary conviction on January 11, 2011,
10 wherein he argues that Judge Benson should have recused himself and that his rights were
11 violated because the district attorney never filed a response to his motion. (Am. Pet. at
12 14.) However, at no time during this hearing did Petitioner argue that Judge Benson was
13 not qualified to hear his motion, and the fact that the district attorney did not serve him
14 with a response prior to the trial was taken into account by Judge Benson, who stated that
15 "[i]f you feel you're at a disadvantage after you hear what [the prosecution] has to say, I'll
16 consider your request for a continuance if you feel you need one." (RT 1105.) A review
17 of the transcript of this hearing shows that Petitioner was permitted to argue at length and
18 that the prosecution had little to say on the matter. (RT 1104-1122.) When Judge Benson
19 asked Petitioner if the matter was submitted, Petitioner indicated that he was "done,"
20 without asking for a continuance. (*Id.* at 1122.) Accordingly, there is nothing in Judge
21 Benson's words or actions during the January 11, 2011 hearing that establishes an implied
22 bias.

23 Lastly, Petitioner asserts that Judge Benson shows his bias by "not sentencing
24 legally." (Am. Pet. at 12.) However, unless Petitioner can show that his sentence was not
25 within statutory limits, this assertion is conclusory. For example, there is no indication
26 that he challenged the sentence as "illegal" in state court and prevailed such that the
27 imposed sentence was stricken or reduced.

28 In conclusion, this case does not present any of the three circumstances established

17

by Supreme Court precedent in which the appearance of bias necessitates recusal. *Crater*, 491 F.3d at 1131-32. First of all, there is no allegation, nor is there any evidence of, Judge Benson having any pecuniary interest, substantial or otherwise, in Petitioner being found guilty in any proceeding before him. Second, there is no evidence that Judge Benson became embroiled in a running, bitter controversy with Petitioner. Petitioner asserts in his traverse that Judge Benson had "animosity" towards him after the preliminary hearing transcripts and his motion for a mistrial. (Trav. at 15.) However, Petitioner fails to point to any specific instances of such animosity in the record,[12] and the Court finds no indication of animosity by Judge Benson during the motion for a mistrial hearing. Lastly, there is no evidence, nor any assertion by Petitioner, that Judge Benson acted as part of the accusatory process. *Crater*, 491 F.3d at 1131.

In *Hurles*, the Ninth Circuit remanded the habeas case to the district court for an evidentiary hearing because, if proved, the petitioner's allegations would show that the judge became personally embroiled in a running, bitter controversy with the petitioner and his counsel thus entitling petitioner to habeas relief. 752 F.3d at 791-92 (citing *Stanley v. Schriro*, 598 F.3d 612, 624 (9th Cir. 2010), for proposition that an evidentiary hearing is required if (1) the petitioner has shown entitlement to an evidentiary hearing pursuant to *Townsend v. Sain*, 372 U.S. 293, 313 (1963), and (2) the allegations, if true, would entitle him to relief). *See also Rippo v. Baker*, 137 S. Ct. 905, 907 (2017) (per curiam) (remanding to determine whether trial judge should have recused himself given that he was being investigated by the same district attorney's office prosecuting petitioner). Here, the Court finds no grounds to hold an evidentiary hearing because none of Petitioner's allegations, if true, would entitle him to relief. Rather, the Court finds that the average

---

[12] Petitioner describes an exchange between himself and Judge Benson but fails to identify where in the transcripts this exchange is recorded. (Trav. at 7-8.) Furthermore, in conjunction with this argument, Petitioner attempts to raise a new confrontation clause claim. (Trav. at 11.) However, a traverse is not the proper pleading to raise additional grounds for relief. *See Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). Nor shall Petitioner be granted an opportunity to file an amended petition to raise this new claim because the Court has already found that the only claim that is timely is the recusal claim discussed herein. (*See* Docket No. 52.)

18

judge in Judge Benson's position was likely to be neutral and there existed no unconstitutional potential for bias. *See Hurles*, 752 F.3d at 789.

Based on the foregoing, the state court's rejection of this claim was not an unreasonable application of Supreme Court precedent or based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). Petitioner is not entitled to habeas relief on this claim.

### C. Motion to Supplement Traverse

Recently, Petitioner filed a "motion to supplement traverse with newly discovered evidence" in which he asserts that his 2006 conviction was illegal, and therefore could not be used thereafter to enhance his sentence for the 2010 conviction. (Docket No. 75.) This is clearly a new claim. As stated above, a traverse is not the proper pleading to raise additional grounds for relief. *See supra* at 18, fn. 11 (citing *Cacoperdo*, 37 F.3d at 507). Furthermore, a petitioner generally may not attack the constitutionality of a prior conviction used to enhance a later sentence. "[O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained." *Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 403-04 (2001) (citation omitted). If Petitioner wants to pursue this claim, he may do so by filing a second or successive petition, but only after obtaining permission from the Ninth Circuit to do so. *See* 28 U.S.C. § 2244(b)(3); *Woratzeck v. Stewart*, 118 F.3d 648, 650 (9th Cir. 1997).

### IV. CONCLUSION

After a careful review of the record and pertinent law, the Court concludes that the Petition for a Writ of Habeas Corpus must be **DENIED**.

19

Further, a Certificate of Appealability is **DENIED**. *See* Rule 11(a) of the Rules Governing Section 2254 Cases. Petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure. *See* Rule 11(a) of the Rules Governing Section 2254 Cases.

The Clerk shall terminate any pending motions as moot, enter judgment in favor of Respondent, and close the file.

**IT IS SO ORDERED**.

Dated: 7/12/2018

BETH LABSON FREEMAN
United States District Judge

Order Denying Petition for Writ of Habeas Corpus
P:\PRO-SE\BLF\HC.14\03619Weible_denyHC